UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

EDDIE C. HALL, SR.,

        Plaintiff,

vs.                                                            Case No.  3:04-cv-428-J-MCR

JO ANNE B. BARNHART, Commissioner of
Social Security,

        Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits.  The Court has reviewed the record, the briefs and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **REVERSED** and **REMANDED** for proceedings not inconsistent with this opinion.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits ("DIB") on June 21, 2000, alleging an inability to work since April 4, 2000 due to a ruptured disc. (Tr. 87-89)  The Social Security Administration ("SSA") denied this application initially and on reconsideration. (Tr. 56, 59).  Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ") on October 1, 2002.  (Tr. 334-75).  On

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 11).

January 22, 2003, the ALJ issued a decision finding Plaintiff was not disabled.  (Tr. 40-5).  Plaintiff filed a Request for Review by the Appeals Council and on June 11, 2003, the Appeals Council granted the request, vacated the ALJ's decision and remanded Plaintiff's claim for further proceedings because the hearing tape could not be located. (Tr. 68-69).  Upon remand, the Appeals Council directed the ALJ to give further consideration to the degree of functional restriction imposed on Plaintiff by his impairments and to obtain current evidence from Plaintiff's treating sources, including medical source statements regarding what Plaintiff can do in spite of his impairments. Id.  A second hearing was held on January 5, 2004 (Tr. 376-423) and on January 27, 2004, the ALJ issued a second opinion again finding Plaintiff was not disabled.  (Tr. 14-29).  Plaintiff filed a Request for Review and presented additional medical records to the Appeals Counsel.  (Tr. 10).  The Appeals Council considered the new evidence, made the additional records part of record and denied Plaintiff's request for review on April 7, 2004 (Tr. 6-9), thereby making the ALJ's decision the final decision of the Commissioner.  Plaintiff timely filed his Complaint in the U.S. District Court on June 3, 2004.  (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff claims to be disabled since April 4, 2000, due to a ruptured disc.  (Tr. 87, 93).

**B.**    **Summary of Evidence Before the ALJ**

Plaintiff was thirty-four years of age on the date the ALJ's decision was issued.

(Tr. 87).  He completed a twelfth-grade education and one year of college.  (Tr. 99).

Plaintiff has past relevant work experience as a lawn service worker, order picker,

industrial truck driver, supply clerk, duplication machine operator and mailer.  (Tr. 109).

Plaintiff's medical history is summarized in the ALJ's decision.  By way of summary,

Plaintiff injured his back while working for Winn Dixie in the warehouse.  While working

on April 4, 2000, Plaintiff experienced some pain in his back and the next day, Plaintiff

was unable to walk due to the pain.  Plaintiff has not worked since April 4, 2000.

On April 10, 2000, Plaintiff underwent a magnetic resonance imaging ("MRI")

which revealed an "[e]nlarged left paracentral protrusion at L5-S1 causing mass effect

on the left S1 nerve root," "[p]osterior displacement of the left S1 nerve root" and

"[p]rominent diffuse disc bulging . . . at L1-2 causing overall mild to moderate central

canal narrowing."  (Tr. 134-35).  Based on this MRI, Plaintiff was referred to Dr. Michael

S. Scharf, M.D., who diagnosed Plaintiff with a herniated disc, L-5, S-1.  (Tr. 227).

During his initial evaluation of Plaintiff on April 17, 2000, Dr. Scharf noted that forward

flexion of Plaintiff's lumbar spine was "markedly limited with pain referred to the left

buttocks," Plaintiff had "an absent left ankle reflex" and in the supine position, Plaintiff's

"straight leg raising on the left [was] markedly positive."  Id.  Dr. Scharf prescribed a

course of epidural steroid injections and Lortab and Lodine 500mg.  Id.  It appears

Plaintiff elected to not have the epidural injections, opting to seek a second opinion

instead.  (Tr. 136).

On July 20, 2000, Plaintiff saw Dr. Soon K. Ahn, M.D.  Dr. Ahn noted that

Plaintiff's straight leg raise testing was positive at 60 degrees on the right and 30

degrees on the left.  (Tr. 188).  Plaintiff's "[d]eep tendon reflexes reveal[ed] the knee jerk

and ankle jerk +2 bilaterally."  Id.  His sensory testing to pinprick was intact in all limbs

and manual muscle testing revealed some mild generalized weakness in the left leg

secondary to pain.  Id.  Dr. Ahn recommended Plaintiff begin physical therapy four times

a week for four weeks to help reduce the pain.  Id.  In August 2000, Plaintiff reported to

Dr. Ahn that physical therapy was not helping his back pain.  (Tr. 187).  He also

informed Dr. Ahn that he planned to attend school to obtain a real estate license.  (Tr.

187).  He was prescribed Celebrex.  Id.

On August 7, 2000, non-examining physician, Harry L. Collins, Jr., M.D.,

completed a Physical Residual Functional Capacity ("RFC") Assessment.  (Tr. 166-73).

Dr. Collins determined Plaintiff was occasionally able to lift up to 20 pounds; frequently

able to lift and/or carry 10 pounds; was able to stand and/or walk (with normal breaks)

for a total of 6 hours in an 8-hour workday and to sit (with normal breaks) for a total of 6

hours in an 8-hour workday.  (Tr. 167).  It was also determined that Plaintiff could

occasionally stoop and crouch.  (Tr. 168).  He found Plaintiff was subject to no

manipulative, visual, communicative or environmental limitations.  (Tr. 169-70).

On August 29, 2000, Dr. Ahn noted that Plaintiff had obtained maximum medical

improvement as of August 22, 2000 with a six percent permanent impairment to his

body as a whole.  (Tr. 185).  Dr. Ahn placed the following restrictions on Plaintiff's ability

to work: he could sit for one hour at a time without interruptions, he could also stand and

walk for one hour each without interruptions.  (Tr. 186).  He could frequently lift 10

pounds and occasionally up to 20 pounds.  Id.  He could occasionally carry up to 10

pounds.  Id.  He was not to bend, squat, crawl, climb or reach above shoulder level; nor

was he to use his feet for repetitive movements.  Id.

Dr. Ahn referred Plaintiff for a functional capacity evaluation, which was

performed on December 19, 2000.  (Tr. 175-83).  The evaluator, Ron Salazar, MPT,

noted that Plaintiff demonstrated "inconsistency of effort and self-limiting pain

behaviors" during the evaluation.  (Tr. 175).  The evaluation found Plaintiff capable of

returning to full-time work at a medium level (lifting 50 lbs. maximum with frequent lifting

and/or carrying of objects weighing up to 25 lbs.), however, the evaluator placed a

frequent lifting restriction on Plaintiff of 15-20 lbs. and limited bending and squatting

activities.  (Tr. 176-77).

At the request of his counsel, Plaintiff was seen by a vocational consultant,

Patricia A. Marshall, to undergo a vocational evaluation.  (Tr. 237-54).  In the report, Ms.

Marshall determined:

> Mr. Hall demonstrated an overall decompensation while in
> the testing setting, having to lie on the floor to complete
> basic paper and pencil tasks.  His tested academic abilities
> and his transferable skills are quite limited.  Mr. Hall is
> experiencing chronic and unrelenting pain.  Conservative
> treatment has been ineffective in ameliorating his symptoms.
> He has rejected his remaining treatment options, surgery or
> epidural injections, for a variety of reasons.  His disabling
> condition has caused a marked level of restriction in his
> general functioning, socially, vocationally, and personally.
> He is experiencing difficulty in completing tasks due to pain
> leading to deficiencies in concentration, persistence, and
> pace.  Further limitations may also result from the side
> effects of prescribed medications.  Based upon Mr. Hall's

> overall skills, his work history, and his current functional
> limitations, it is this consultant's opinion that competitive job
> placement is not a viable option.  His overall occupational
> base has been markedly eroded.

(Tr. 242).

On February 5, 2001, Dr. Timothy McCormick, D.O. performed a consultative examination of Plaintiff.  (Tr. 190-92).  Dr. McCormick noted that strength testing revealed no motor deficits, however, he was unable to continue the testing as Plaintiff complained that the motions were causing him pain.  (Tr. 192).  Dr. McCormick indicated that Plaintiff's pain complaints appeared exaggerated based on his history and the duration of Plaintiff's problems.  Id.  Dr. McCormick further stated that the "symptoms level [Plaintiff] was presenting with was more acute than would be expected based on the duration of his problems and appeared greater than that reflected in prior other records."  Id.

On February 16, 2001, non-examining physician, Nicholas H. Bancks, M.D., completed a second Physical RFC Assessment.  (Tr. 193-200).  Dr. Bancks determined Plaintiff was occasionally able to lift up to 10 pounds; frequently able to lift and/or carry less than 10 pounds; was able to stand and/or walk (with normal breaks) for a total of at least 2 hours in an 8-hour workday and to sit (with normal breaks) for a total of 6 hours in an 8-hour workday.  (Tr. 194).  It was also determined that Plaintiff could occasionally balance, stoop, and crouch and was never to climb ladders/ropes/scaffolds.  (Tr. 195).  Dr. Bancks noted no manipulative, visual or communicative limitations but did find Plaintiff should avoid concentrated exposure to hazards (machinery, heights).  (Tr. 197).

Dr. Ronald Dennie, M.D., initially evaluated Plaintiff on February 21, 2001.  (Tr. 221-25).  Plaintiff rated his pain as a 10 on a scale of 0-10.  (Tr. 222).  Dr. Dennie noted that Plaintiff had been seen by Dr. Scharf who had recommended surgery.  (Tr. 221).  Upon examination, Plaintiff demonstrated restricted lumbar mobility, had a very "antalgic gait" and demonstrated prominent spasm over the left and right lumbar regions.  (Tr. 224).  Dr. Dennie diagnosed Plaintiff with lumbar intravertebral disc syndrome with disc herniation and lumbar radiculopathy.  Id.  Dr. Dennie ordered an EMG and nerve conduction study of the lower extremities, thought Plaintiff should consider a surgical reconsultation and thought Plaintiff would benefit from a series of paravertibral nerve blocks.  Id.

The EMG and nerve conduction study was performed on March 23, 2001.  (217-18).  It revealed:

> a marked incomplete relaxation pattern suggesting muscles spasm . . . There is a marked delay in the left H-reflex latency on comparison to the right suggesting a left S1 sensory dysfunction.  There is a mild delay in the right peroneal F-wave latency on comparison to the left suggesting a possible right peroneal nerve involvement.  This may represent either a peripheral nerve process or possibly, even involvement at the horn cell and nerve root region.

(Tr. 218).

On January 16, 2001, Dr. Ahn prepared a letter in which Plaintiff's work restrictions were noted as lifting no more than ten pounds and no sitting or standing for more than one-half hour at a time.  (Tr. 278).

Plaintiff received treatment from Dr. Boa Pham, D.O. at the Florida Spine Care and Pain Center from March 2002 to August 2002 and from October 2002 to October 2003.  (Tr. 255-77, 286-328).  At the initial evaluation on March 10, 2002, Dr. Pham noted:

> [s]ensory examination of the lower is decreased with light touch and pinprick along L5-S1.  Muscle strength testing of the major groups of the upper and lower extremities is graded 4 out of 5.  Deep tendon reflexes decreased at the knee joint and ankle joint.  Cranial nerves II though XII are intact, gait is normal, straight leg raising is positive on the right.

(Tr. 256).  Dr. Pham prescribed Lortab and muscle relaxants for Plaintiff and Plaintiff underwent a series of epidural injections.  After each of the injections, Dr. Pham noted that Plaintiff's pain had decreased (Tr. 265, 294, 302, 309, 324), however, Dr. Pham revised his notations later to reflect that after the procedures on October 25, 2002 and July 23, 2003, Plaintiff's pain did not decrease.  (Tr. 329-30).

At the hearings, Plaintiff and his wife testified about Plaintiff's pain and the limitations caused by his pain.  Specifically, at the first hearing on October 1, 2002, Plaintiff testified that he could sit continuously anywhere from forty-five minutes up to two hours before the pain caused him to lie down.  (Tr. 342).  He stated he could sometimes drive to church, a fifteen to twenty minute drive, and that he could drive to the store.  (Tr. 342-43, 348).  In a typical day, Plaintiff claimed he prayed, read his Bible, watched television and read books.  (Tr. 349).  He could occasionally wash dishes and do the vacuuming.  (Tr. 350-52).  He further stated he recently completed a class at

FCCJ on real estate.  (Tr. 360).  Plaintiff also testified that he and his wife took a five

and a half hour car trip to Atlanta.  (360-61).

At the second hearing on January 5, 2004, Plaintiff testified he could sometimes

walk for twenty to thirty minutes and could stand for about twenty minutes.  (Tr. 388-89).

He stated he could sometimes bend and that most of the time, he could dress himself.

(Tr. 390).  He claimed to be able to sit for an hour to and hour and a half.  (Tr. 391).  In

order to get relief from the pain, Plaintiff explained that he needed to lie down and prop

up his feet.  (Tr. 393).  Plaintiff testified he went to the store two to three times a week

and some weeks, he went every other day.  (Tr. 389).  Plaintiff stated he no longer

drove himself, but later explained that his license had been suspended due to his being

in arrears in child support payments.  (Tr. 392-93).

Plaintiff further testified that whereas he used to go to church three times a week

and teach Sunday school, he now only attended church once a week and no longer

taught.  (Tr. 399-400).  Plaintiff's wife testified that she could only make it to church

once a week because she was too busy as a result of working two jobs.  (Tr. 413).

## C.   Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to either result in death or last for a continuous

period of not less than 12 months.  42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. §

404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20

C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful

activity, he is not disabled.  29 C.F.R. § 404.1520(b).  Second, if a claimant does not

have any impairment or combination of impairments which significantly limit his physical

or mental ability to do basic work activities, then he does not have a severe impairment

and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet

or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is

disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent

him from doing past relevant work, he is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if

a claimant's impairments (considering his residual functional capacity, age, education,

and past work) prevent him from doing other work that exists in the national economy,

then he is disabled.  20 C.F.R. § 404.1520(f).  Plaintiff bears the burden of persuasion

through step four, while at step five, the burden shifts to the Commissioner.  Bowen v.

Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

       In the instant case, the ALJ determined Plaintiff met the nondisability

requirements of the Social Security Act and was insured for benefits up through the date

of the decision.  (Tr. 15, 27).  At step one, the ALJ found Plaintiff had not engaged in

substantial gainful activity since his alleged onset date, April 4, 2000.  (Tr. 17, 27).  At

step two, the ALJ determined Plaintiff had a back disorder, "an impairment that is

'severe' within the meaning of the Regulations in that it imposes more than minimal

limitations in the claimant's ability to perform basic work-related functions."  (Tr. 21, 27).

Further, the ALJ determined that Plaintiff did not have an impairment or combination of

impairments, that met or medically equaled one of the impairments listed in Appendix 1,

Subpart P, Regulations No. 4.  Id.

The ALJ found Plaintiff retained the residual functional capacity to:

> sit for up to 6 hours and stand and walk for a total of up to 2
> hours in an 8-hour day as long as he has the freedom to
> stand up and move around for 1-2 minutes every half hour.
> He has the ability occasionally to lift and carry up to 10
> pounds and frequently to lift and carry objects weighing less
> than 10 pounds.  He has no postural, manipulative, visual,
> communicative, or environmental limitations.  Due to effects
> of medication, the claimant experiences occasional lapses of
> concentration, persistence and pace.

(Tr. 25, 28).  In making this determination, the ALJ determined that Plaintiff's testimony

regarding his pain and ability to work was not entirely credible.  (Tr. 23-25).  At step

four, the ALJ utilized the testimony of a vocational expert (VE) during the hearing to

determine if Plaintiff could perform any of his past relevant work.  (Tr. 419).  The VE

testified Plaintiff could perform his past relevant work as a supply clerk as performed by

Plaintiff.  Id.  Accordingly, the ALJ found that Plaintiff was not disabled within the

meaning of the Social Security Act.  (Tr. 27, 28).

###    D.    Evidence Presented to the Appeals Council

After receiving the ALJ's decision, Plaintiff filed a Request for Review of Hearing

Decision/Order.  (Tr. 10).  With it, Plaintiff provided the Appeals Council with new

evidence consisting of a medical evaluation by Dr. Rodney A. Marcom dated July 20,

2003.  (Tr. 331-33).  It appears Dr. Marcom evaluated Plaintiff on June 26, 2003 upon

the request of Plaintiff's attorney and prepared a report in which he opined that

Plaintiff's complaints were "consistent with his work trauma."  (Tr. 333).  He further

opined that Plaintiff:

> does not possess the necessary education qualifications to
> pursue a sedentary vocation, nor could he do so, since his

current condition precludes prolonged sitting.  He is currently
unable to pursue any form of gainful employment.  It is my
medical opinion that Mr. Hall does meet each of the Social
Security criteria for Listing 1.04 relating to Spinal Disorders.
I reviewed the IME opinions concerning a lack of consistency
in Mr. Hall's complaints and physical findings as well as the
Functional Capacity Evaluation with high Waddell scores.
My opinion based upon the findings during my evaluation
remains that he is substantially impaired leading to a strong
recommendation for consideration of full disability.

Id.

The Appeals Counsel accepted this additional evidence and considered it,

however, found that the new information did not "provide a basis for changing the

Administrative Law Judge's decision."  (Tr. 6-7).

III.    **STANDARDS OF LAW**

A.    **The Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ

applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir.

1988), and whether the findings are supported by substantial evidence.  Richardson v.

Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact

are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial

evidence is more than a scintilla – i.e., the evidence must do more than merely create a

suspicion of the existence of a fact, and must include such relevant evidence as a

reasonable person would accept as adequate to support the conclusion.  Foote v.

Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835,

838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## IV.   ANALYSIS

Plaintiff argues several issues on appeal.  First, Plaintiff argues the ALJ erred in rejecting Plaintiff's subjective complaints of pain.  (Doc. 18, p.19).  Second, Plaintiff asserts the ALJ committed error in failing to accord the opinions of Plaintiff's treating physicians controlling weight.  (Doc. 18, pp. 17-18).  Next, Plaintiff takes the position that the ALJ erred by ignoring evidence (i.e. the testimony of Plaintiff's wife regarding Plaintiff's daily activities and his signs of disability as well as the test results of Dr. Pham and Dr. Dennie and the vocational report of Ms. Marshall).  (Doc. 18, p.16).  Finally, Plaintiff claims the Appeals Council erred in not remanding the claim back to the ALJ upon receipt of the evidence from Dr. Marcom.  (Doc. 18, pp. 18-19).

The Court will address each of these arguments.

A.    **Whether the ALJ erred in rejecting Plaintiff's subjective complaints of pain**

Plaintiff claims the ALJ erred in finding Plaintiff's description of his pain and the limitations on his ability to work because of the pain were not credible.  Pain is a non-exertional impairment.  Foote, 67 F.3d at 1559.  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).  Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

In this case, the ALJ did not specifically reference the Eleventh Circuit pain standard, however, it appears he conducted the correct analysis for pain and subjective complaints.  Specifically, the ALJ found that Plaintiff had "a herniated nucleus pulposus

at L5-S1" as well as a "history of back pain" but the ALJ found that "the evidence [did]

not support a finding that [Plaintiff's] impairment is of a severity that would cause the

pain and limitations alleged."  (Tr. 24).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ

must articulate specific and adequate reasons for doing so, or the record must be

obvious as to the credibility finding.  Jones v. Department of Health and Human

Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on

substantial evidence).  A reviewing court will not disturb a clearly articulated credibility

finding with substantial supporting evidence in the record.  Here, the ALJ provided

specific reasons for his determination regarding Plaintiff's credibility.  The ALJ

referenced Plaintiff's conduct during the FCE in which it was noted that Plaintiff

exhibited "inconsistency of effort and self-limiting pain behavior" (Tr. 175) as well as the

consultative examining physician's report that Plaintiff's "pain complaints . . . appeared

exaggerated based on history and duration of problem" and the notation that "[t]he

symptoms level [Plaintiff] was presenting with was more acute than would be expected

based on the duration of his problems and appeared greater than that reflected in prior

other records" (Tr. 192).  (Tr. 24).  Additionally, the ALJ noted that Plaintiff's pain

complaints were inconsistent with the level of activities Plaintiff reported, such as

attending real estate school, taking a five and a half hour trip to Atlanta, driving once a

day, going to the grocery store, and preaching at church three times a week.  (Tr. 24).

In sum, the ALJ discussed Plaintiff's subjective complaints of pain and found that

the medical evidence did not substantiate the severity of his complaints.  As required,

he articulated several reasons for discounting Plaintiff's complaints.  Accordingly, the

ALJ's decision regarding Plaintiff's credibility is consistent with the law and supported by

substantial evidence

> **B.   Whether the ALJ erred in failing to accord controlling weight
> to the opinions of Plaintiff's treating physicians**

Plaintiff also claims the ALJ erred by failing to accord controlling weight to the

opinions of Doctors Scharf, Dennie and Pham regarding Plaintiff's condition.  Plaintiff

appears to raise two issues with this argument.  First, Plaintiff takes the position that the

ALJ erred in failing to give controlling weight to Dr. Pham's opinion that Plaintiff was

disabled.  Next, Plaintiff appears to argue that the ALJ erred in not finding that Plaintiff's

condition either met or was medically or functionally equivalent to Listing 1.04 as the

opinions of Doctors Scharf, Ahn, Dennie and Pham support such a finding.  The Court

will address each of these arguments.

> **1.   Dr. Pham's Opinion that Plaintiff was disabled**

As for Plaintiff's arguments regarding Dr. Pham's opinion that Plaintiff is disabled,

a medical opinion on the ultimate issue of disability, even by a treating physician, is

never controlling or entitled to special significance.  See SSR 96-5p.  The ALJ is

responsible for making the ultimate determination about whether a claimant meets the

statutory definition of disability.  20 C.F.R. § 404.1527(e).  Accordingly, the ALJ did not

commit any error in discounting Dr. Pham's opinion that Plaintiff was disabled.

**2.    Listing 1.04**

Listing 1.04 provides in relevant part:

> Disorders of the spine . . . (e.g., herniated nucleus pulposus,
> spinal arachnoiditis, spinal stenosis, osteoarthritis,
> degenerative disc disease, facet arthritis, vertebral fracture),
> resulting in compromise of a nerve root (including the cauda
> equina) or the spinal cord.  With:
>
> A. Evidence of nerve root compression characterized by
> neuro-anatomic distribution of pain, limitation of motion of
> the spine, motor loss (atrophy with associated muscle
> weakness or muscle weakness) accompanied by sensory or
> reflex loss and, if there is involvement of the lower back,
> positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04.  Plaintiff argues the ALJ erred in

discounting or failing to consider the opinions of his treating physicians which indicate

that he met the requirements of listing 1.04(A).  The Commissioner responds that

Plaintiff has failed to show that his impairment met all of the criteria for Listing 1.04.

Specifically, the Commissioner claims Plaintiff has shown no evidence of reflex or

sensory abnormalities.  (Doc. 19, p.10).  However, the EMG and nerve conduction study

by Dr. Dennie noted a "marked delay in the left H-reflex latency on comparison to the

right suggesting a left S1 sensory dysfunction."  (Tr. 218).  Dr. Scharf's examination of

Plaintiff on April 17, 2000 noted that forward flexion of Plaintiff's lumbar spine was

"markedly limited with pain referred to the left buttocks," Plaintiff had "an absent left

ankle reflex" and in the supine position, Plaintiff's "straight leg raising on the left is

markedly positive."  (Tr. 227).  Additionally, on March 10, 2002, Dr. Pham noted that

Plaintiff's:

> [s]ensory examination of the upper is normal with light touch and pinprick.  Sensory examination of the lower is decreased with light touch and pinprick along L5-S1.  Muscle strength testing of the major groups of the upper and lower extremities is graded 4 out of 5.  Deep tendon reflexes decreased at the knee joint and ankle joint.  Cranial nerves II through XII are intact, gait is normal, straight leg raising is positive on the right.

(Tr. 256).  The Court does not believe the evidence is clear that Plaintiff meets the requirements of Listing 1.04, however, believes it is appropriate for the ALJ to consider the evidence in the record and make a specific determination as to whether Plaintiff's impairment meets or is medically or functionally equivalent to Listing 1.04.  Accordingly, the Court will remand the case to the ALJ to make such a determination.

### C. <u>Whether the ALJ committed error in failing to consider evidence</u>

Plaintiff claims the ALJ erred in failing to consider and discuss several pieces of evidence.  Specifically, Plaintiff asserts the ALJ failed to consider his wife's testimony regarding Plaintiff's daily activities and his disability.  Plaintiff further claims the ALJ failed to consider and discuss the test results of Doctors Pham and Dennie and the vocational report of Ms. Marshall.  The Commissioner responds that the ALJ did consider Plaintiff's wife's testimony as he referenced it in his opinion.  (Doc. 19, p.6).  Further, the Commissioner argues that the ALJ did consider the evidence from Doctors Pham and Dennie.  (Doc. 19, p.7).  Finally, the Commissioner notes that the ALJ failed to discuss the vocational report of Ms. Marshall but points out that Plaintiff failed to explain the relevance of Ms. Marshall's report. (Doc. 19, p.14, n.4).

Although an ALJ must consider "all medical evidence that is credible, supported by clinical findings, and relevant to the question at hand," he "is not required to discuss

every piece of evidence submitted." <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984); <u>Black v. Apfel</u>, 143 F.3d 383, 386 (8th Cir. 1998).  Additionally, the ALJ's failure to cite specific evidence does not indicate that it was not considered." <u>Wheeler v. Apfel</u>, 224 F.3d 891, 896 (8th Cir. 2000) ("[t]hat the ALJ did not attempt to describe the entirety of Wheeler's medical history does not support Wheeler's argument that the ALJ disregarded certain aspects of the record.").

With respect to Plaintiff's wife's testimony, the ALJ specifically referenced Ms. Hall's testimony in his opinion when he stated, "the claimant's wife testified that [Plaintiff] goes to the grocery store with her from time to time.  She said he forgets things since being on medication."  (Tr. 24).  The remainder of Ms. Hall's testimony simply reiterated Plaintiff's testimony regarding what he could do.  Accordingly, the Court finds no error in the ALJ's failure to specifically mention all of Ms. Hall's testimony.

Plaintiff also claims the ALJ failed to consider and discuss test results of Dr. Dennie and Dr. Pham, however, Plaintiff does not specifically identify the test results to which he is referring.  The undersigned has reviewed the records from both Dr. Dennie and Dr. Pham and the only test result in the records is the EMG and nerve conduction study results ordered by Dr. Dennie.  (Tr. 217-18).  Although, the ALJ specifically referenced these results in his opinion (Tr. 20), he did not analyze them in his finding that Plaintiff was not disabled.  Additionally, as the Court is remanding the case to the ALJ to specifically address whether Plaintiff's impairment satisfies the requirements of Listing 1.04, the ALJ will need to analyze the EMG and nerve conduction results.

Finally, Plaintiff claims it was error for the ALJ to consider and discuss the vocational report of Ms. Marshall.  (Tr. 237-54).  The Commissioner concedes that the ALJ did not discuss the report but argues that Plaintiff has failed to show how the report is relevant.  (Doc. 19, p.14, n.4).  The report is contrary to the ALJ's decision and does contain direct observations of Plaintiff's ability to perform basic tasks from a neutral observer.  As such, the undersigned finds the ALJ should have discussed the report, "at a minimum explaining why it was not relevant."  Groskreutz v. Barnhart, 108 Fed.Appx. 412, 416 (7th Cir. 2004); see also, Abbott v. Barnhart, 126 Fed.Appx. 389, 390-91 (9th Cir. 2005).

**D.   Whether the Appeals Council erred in failing to remand the case**

Finally, Plaintiff claims it was error for the Appeals Council to not remand the case after receiving the report from Dr. Marcum.  Because the Court is remanding the case on other grounds, it will order the ALJ to consider Dr. Marcom's report.  The Court notes that the report appears to simply be an opinion of a non-treating physician regarding the ultimate question of whether Plaintiff is disabled and therefore, not entitled to much weight, however, as the case is being remanded to the ALJ, he is directed to review and consider the report and if necessary, explain fully why he is rejecting it.

**V.   CONCLUSION**

For the foregoing reasons, the Commissioner's decision is hereby **REVERSED** and **REMANDED** pursuant to sentence four, 42 U.S.C. 405(g).  On remand, the ALJ shall consider whether Plaintiff's impairment meets the requirements or is medically or functionally equivalent to the requirements for Listing 1.04, consider the vocational

report, the report of Dr. Marcom and consider any further evidence the ALJ deems

appropriate.  The Clerk of the Court is directed to enter judgment consistent with this

opinion and, thereafter, to close the file.

     **DONE AND ORDERED** at Jacksonville, Florida, this __12th__ day of September,

2005.


                                       *Monte C. Richardson*

                                       MONTE C. RICHARDSON
                        UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record